UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PRUCO LIFE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 08-69S |
| ) | |
| WILMINGTON TRUST CO., TRUSTEE ) | |
| under the Paul E. L'Archevesque ) | |
| Special Revocable Trust - 2006, ) | |
| JAY L'ARCHEVESQUE, and PAUL E. ) | |
| L'ARCHEVESQUE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 08-74S |
| ) | |
| WILMINGTON TRUST CO., TRUSTEE ) | |
| under the Paul E. L'Archevesque ) | |
| Special Revocable Trust - 2006, ) | |
| JAY L'ARCHEVESQUE, and PAUL E. ) | |
| L'ARCHEVESQUE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DECISION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court are four motions. First, Defendant Wilmington Trust Company ("Wilmington") moves to dismiss the plaintiff's complaint pursuant to Fed R. Civ. P. 12(b)(2) (lack of

personal jurisdiction) in both the 08-69 action ("Pruco") and the 08-74 action ("Lincoln").   Second, Defendant Paul L'Archevesque ("L'Archevesque") moves to dismiss the plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim) in both the Pruco and Lincoln actions as well.   Wilmington's personal jurisdictional motions raise procedural issues with respect to whether Wilmington waived its right to assert the affirmative defense of lack of personal jurisdiction by not including it in its first response, and/or by its participation in the litigation to date.   L'Archevesque's motions raise a substantive issue with respect to whether he has a legal interest in these cases, and whether either plaintiff actually seeks relief against him individually.   For the reasons that follow, Wilmington's motions will be denied and L'Archevesque's motions will be granted.

I.   Background

A.   The Parties

Pruco is a life insurance company organized under the laws of Arizona with its principal place of business in New Jersey. Lincoln is a life insurance company organized under the laws of Indiana with its principal place of business in Indiana. Wilmington is a Delaware-chartered bank and trust company with its main office located in Wilmington, Delaware.   Wilmington serves as Trustee under the Paul E. L'Archevesque Special Revocable Trust-2006.   Co-Defendant Paul E. L'Archevesque ("L'Archevesque") is a

Florida citizen who, on the same day in the same place (East Providence) with the same insurance agent, applied to Pruco and Lincoln for two separate life insurance policies.

  B.   The Dispute

  This litigation arises from alleged factual misrepresentations made by L'Archevesque on his life insurance applications.  On or about February 16, 2006, L'Archevesque applied to Pruco and Lincoln for a life insurance policy through a Rhode Island insurance agent. Both applications asked certain questions about L'Archevesque's health and medical history.  L'Archevesque allegedly responded that he did not take any prescription medication, had not been treated for any neurological disorder, and had no "disease, disorder or condition not previously mentioned."[1]  On March 1, 2006, Lincoln issued life insurance policy No. 7229888 with an effective date of March 3, 2006.   On March 7, 2006, Pruco issued life insurance policy No. V1207727 and delivered the Policy to the beneficiary, Jay L'Archevesque ("Jay"), as Trustee of the Paul E. L'Archevesque Special Trust-2006, and L'Archevesque in East Providence, Rhode Island.   On or about March 20, 2006, Jay submitted to Pruco a request to change the beneficiary of the Policy to Wilmington.

---

  [1] The signature line on the Pruco life insurance application contains multiple affirmations, one which states, "To the best of my knowledge and belief, the statements in this application, as well as any forms that the Company designates to be part of the application and that are attached to the policy, are complete, true and correctly recorded."

Administrative forms were also filed with Lincoln requesting a change in beneficiary. The Pruco Policy carried an insurance amount of $15,000,000. The Lincoln Policy carried an insurance amount of $5,000,000.

In late 2007, Pruco received L'Archevesque's medical records containing medical history that allegedly had not previously been disclosed to Pruco. Lincoln also learned of L'Archevesque's undisclosed medical history. Pruco and Lincoln contend that these records revealed L'Archevesque's treatment for Alzheimer's disease. With this new information, Pruco activated a clause in the life insurance policy contract allowing Pruco to challenge the Policy within two years of the date of issuance. On February 5, 2008, Pruco informed both Wilmington and L'Archevesque that the policy was void based on the alleged material misrepresentations. Pruco returned to Wilmington the premiums paid plus interest totaling $845,964.60. Both Lincoln and Pruco seek a declaratory judgment that each respective policy is void ab initio.

C.   Procedural History[2]

Because the sequence of events differ slightly, the Court addresses the events in each case separately and in turn. First, in the Pruco case, Pruco filed its complaint on February 28, 2008. On March 14, 2008, Wilmington answered Pruco's complaint and listed

---

[2] This section addresses only those incidents relevant to the instant motions.

a number of affirmative defenses.  Personal jurisdiction was not among them.  On May 8, 2008, the Court held a scheduling conference (for both cases) with all counsel of record present.  On June 10, 2008, Pruco filed an amended complaint with additional rescission claims.  About a month later on July 30, 2008, prior counsel for Wilmington withdrew his appearance in the case.  Current counsel became involved and filed an amended answer on August 14, 2008.  In this amended answer, Wilmington asserted the affirmative defense of lack of personal jurisdiction for the first time.

In the Lincoln case, Lincoln filed its complaint on March 3, 2008, and on April 9, 2008, Wilmington filed its answer (which did not include the personal jurisdiction defense).  As stated above, Wilmington was represented at a scheduling conference on May 8, 2008 before prior counsel withdrew his appearance in July of 2008.  Months later, apparently after a phone conversation in which Lincoln indicated it planned to file an amended complaint, Wilmington filed an amended answer on January 6, 2009.  Lincoln then filed its amended complaint a few days later on January 10, 2009.  Wilmington's January 6 amended answer contained the personal jurisdiction defense for the first time.  On January 20, 2009 it moved to dismiss for lack of subject matter jurisdiction.

II.   Wilmington's Motion to Dismiss

    A.   Parties' Contentions

    In both cases, Wilmington maintains it does not have the requisite minimum contacts with Rhode Island to support a claim of general or specific jurisdiction.   And, says Wilmington, its failure to raise the defense in its first answer in both cases does not waive the defense because:   1) in the Pruco case, it may re-assert the defense following the filing of the amended complaint; and 2) in the Lincoln case, it may re-assert the defense in its amended answer that was filed in anticipation of Lincoln's amended complaint, which came a few days later.   The basic theme of Wilmington's argument is that "[the] amended complaint completely supersedes [the] original complaint, and thus the original complaint no longer performs any function in the case."   Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 16 (1st Cir. 2003).   Thus, Wilmington claims it timely and appropriately responded to both amended complaints by including the Fed. R. Civ. P. 12(b)(2) personal jurisdiction defense when it engaged new counsel.

    Pruco and Lincoln take a different view.   They argue that Wilmington waived the right to assert this defense by failing to raise it in its first responsive pleading, and by its ongoing participation in the litigation.[3]   Lincoln claims the fact that

_____

    [3] Pruco and Lincoln also claim that even if the Court permits Wilmington to raise the defense, it fails on its substance because Wilmington voluntarily agreed to serve as trustee to a trust that

Wilmington's amended answer was filed a few days before the amended complaint is a red herring and that the bottom line in both cases is that Wilmington's prior counsel dropped the ball by not including the defense in the original answers.   Both Plaintiffs highlight the fact that the litigation had advanced to the stage where Rule 16 and settlement conferences were held, a protective order was negotiated, and discovery had taken place.[4]   Wilmington argues that these are simply logistical appearances and do not constitute waiver by conduct.

   B.   Legal Standards

   The defense of lack of personal jurisdiction may be asserted by motion so long as such motion is "made before pleading if a responsive pleading is allowed."   Fed. R. Civ. P. 12(b).   The defense is waived if (a) it is omitted from a party's first 12(b) motion, or (b) it is not made by motion nor included "in a responsive pleading."   Fed. R. Civ. P. 12(h)(1)(B).   A defendant may waive the personal jurisdiction defense through conduct,

---

was the beneficiary of a Rhode Island life insurance policy covering a Rhode Island resident.   The Court  sees no reason to address the 12(b)(2) minimum contacts arguments given its decision that the waiver argument carries the day.

   [4] Although it responded to Pruco's discovery requests, Wilmington maintains it preserved the right to dispute the Court's jurisdiction through the following disclaimer:  "Wilmington Trust denies (a) that it has the requisite minimum contacts with this jurisdiction. . . . By preparing and serving these General Objections and Answers, Defendant Wilmington Trust does so without prejudice to and does not waive any of its defenses . . . ."

7

failing to assert it seasonably, or through formal submission to the proceedings. <u>Marcial Ucin, S.A. v. SS Galicia</u>, 723 F.2d 994, 996 (1st Cir. 1983).

   C.   Discussion

   At first glance, it seems the Court should not look favorably on Wilmington's attempt to revive its 12(b)(2) defense months after its initial answer. Repeatedly, the First Circuit has stated that a party must assert a 12(b)(2) defense in its "first defensive move, be it a Rule 12 motion or a responsive pleading." <u>Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund</u>, 967 F.2d 688, 691-92 (1st Cir. 1992) (quoting <u>Glater v. Eli Lilly & Co.</u>, 712 F.2d 735, 738 (1st Cir. 1983)). The purpose behind this rule is obvious: it allows the Court to flush out all Rule 12 defenses at one time to avoid needless delay. <u>Manchester</u>, 967 F.2d at 691. An exception applies, however, when the availability of a Rule 12 affirmative defense <u>first</u> reveals itself through what is contained in an amended complaint. <u>Ne. Land Servs., Ltd. v. Schulke</u>, 988 F. Supp. 54, 57 (D.R.I. 1997). This too makes perfect sense -- if a party had no reason to believe a Rule 12 defense was available, it should not be faulted for failing to raise it. The exception clearly does not apply here. There is no allegation any amended complaint so dramatically changed the landscape that the defense then magically appeared to Wilmington. Rather, the facts and fundamental claims of both plaintiffs have

8

remained the same.   Thus, the question is what effect, if any, an amended complaint has on a 12(b)(2) waiver.   In other words, whether the personal jurisdiction defense was somehow revived by the amended complaints?[5]

Although Fed. R. Civ. P. 12(b)(2) has been subject to much interpretation by the courts, surprisingly only a few Circuits have squarely addressed the effect of an amended complaint on a 12(b)(2) waiver.  Fed. R. Civ. P. 12(h)(1)(B) states a defendant must assert lack of personal jurisdiction in "a responsive pleading" to avoid waiver.   The rule does not indicate what type of responsive pleading qualifies.  Nevertheless, the majority of courts have held a subsequent responsive pleading cannot revive a 12(b)(2) defense once waived.  See, e.g. Gilmore v. Shearson/Am. Express, Inc., 811 F.2d 108, 112 (2d Cir. 1987) (holding that an amended complaint is not sufficient to override a party's earlier waiver) overruled on other grounds by McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co., 849 F.2d 761 (2d Cir. 1988).  Gilmore recognizes that

_____

[5] With respect to the procedural difference in Wilmington's conduct in the Lincoln case (amended answer filed before amended complaint), Wilmington could have advanced the argument that it properly included the personal jurisdiction defense in its amended answer, which was allowed as a matter of course.  See Fed. R. Civ. P. 12(h)(1)(B)(ii).  But the shoe does not fit:  Wilmington's amended answer in Lincoln was filed upon leave of Court, eight months after the original answer and, according to Wilmington's counsel, in anticipation of (essentially in response to) Lincoln's forthcoming amended complaint.  See Fed. R. Civ. P. 15(a)(2). Thus, the Court treats Wilmington's amended answer in Lincoln as an answer in response to an amended complaint and applies the same analysis to both cases.

while an amended complaint ordinarily replaces the original complaint, "it does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint." Id.; see also Credle-Brown v. Connecticut, 246 F.R.D. 408, 409-10 (D. Conn. 2007) ("A response to an amended complaint is not sufficient to override a party's earlier waiver.").

A decision from the Fourth Circuit is also instructive on this point. In Rowley v. McMillan, the Court held "an amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading." 502 F.2d 1326, 1333 (4th Cir. 1974).[6] See also Fed. Agric. Mortgage Corp. v. It's a Jungle Out There, Inc., No. C 03-3721 VRW, 2005 WL 3325051 at *5 (N.D. Cal. Dec. 7, 2005) ("the weight of authority outside this circuit holds that where the complaint is amended . . . the defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that could have been asserted in the first motion").

To challenge this authority, Wilmington cites to Massey v. Helman. 196 F.3d 727, 735 (7th Cir. 1999). In Massey, the Seventh

---

[6] See also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

Circuit held "[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." Id. The facts at hand, however, are distinguishable in important ways from those in Massey. The affirmative defense at issue in Massey was a failure to exhaust administrative remedies -- not a Rule 12(b)(2)-(5) defense that a litigant waives by not raising in a motion to dismiss or answer.[7] The Massey analysis under Fed. R. Civ. P. 8(c) (Affirmative Defenses) is not particularly helpful to this Court's consideration of the personal jurisdiction issue, because Rule 8 lacks the "raise it or waive it" language of combined Rules 12(b)(2), 12(g) and 12(h). This difference is what compels the stricter approach to waiver issue under Rule 12. See Harris Bank Naperville v. Pachaly, 902 F. Supp. 156, 157-58 (N.D. Ill. 1995) (amended complaint does not allow a party to revive the defense of lack of personal jurisdiction if available previously).

When the veil is pulled back, what Wilmington really appears to argue is that its new counsel should be allowed a "do-over" to assert the defense at its earliest opportunity, and that former

---

[7] The same goes for Velez-Arocho v. Jardin, another case Wilmington cites involving failure to exhaust administrative remedies as a defense in a discrimination case. No. Civ. 04-1093, 2005 WL 1640680 at *7-8 (D.P.R. May 24, 2005). Velez-Arocho relied on Massey in holding that an amended complaint allowed the defendant to assert a previously unmentioned affirmative defense. Id.

counsel's failure should thus be forgiven.  <u>See</u> Docket No. 54
("Thereafter, Wilmington Trust retained new counsel who determined
that Wilmington Trust did not have sufficient minimum contacts with
the State of Rhode Island."). Wilmington cites no case standing
for the proposition that introduction of new counsel somehow
revives a previous 12(b)(2) waiver.  It nonetheless asks this Court
to rewind the clock to alter prior counsel's mistake or, perhaps,
strategic decision not to raise the jurisdictional defense.  But in
law, as in life, do-overs are a rare commodity, and Rule 12 does
not provide one here.  In sum, then, while the amended complaints
in both cases supercede the original complaints for all intents and
purposes in the litigation, they do not revive Wilmington's
personal jurisdiction defense.

Finally, even if Wilmington were correct that the amended
complaints revived its personal jurisdiction defense, it is still
out of luck because its participation in the litigation in both
cases constitutes waiver as well.  Determining what constitutes
waiver by conduct is more art than a science to be sure, and there
is no bright line rule.  The Court must consider the passage of
time and a defendant's procedural moves in larger context of the
case as a whole.  In <u>Manchester</u>, the defendants waived their venue
argument through conduct when they objected to the Court's venue
for the first time in an answer filed nine weeks after litigation
began.  967 F.2d at 692.  Perhaps more important than the nine-week

delay, the Court noted that the defendants requested hearings regarding the plaintiff's motions for a temporary restraining order and a preliminary injunction, and moved to have its attorneys admitted *pro hac vice* before they manifested their venue objection. Id. Defendants could have "easily inserted a sentence or paragraph in the motion first filed in the district court, preserving the venue issue," but did not.   Id.

Here, Wilmington could have easily objected to personal jurisdiction early on.   Instead, it waited eight months and participated in numerous pre-trial activities.   Wilmington argues that applying for *pro hac vice* admission, filing motions for time extensions, or motions allowing a client to attend a conference via telephone are not sufficient enough to trigger waiver by conduct. See Braman v. Quizno's Franchise Co., No. 5:07cv2001, 2008 WL 611607 at *2 (N.D. Ohio Feb. 20, 2008).   That may be true in some cases, but the participation here, when viewed as a whole, amounted to much more than the simple motions at issue in Braman. Wilmington not only filed an answer without the personal jurisdiction defense, it made initial Rule 26 disclosures, participated in negotiation of a protective order, responded to discovery requests and attended a Rule 16 conference.   Pruco and Lincoln relied for months upon what appeared to be consent to suit in Rhode Island.   The First Circuit has traditionally strictly applied the waiver by litigation conduct rule, and Wilmington's

13

argument that its conduct does not meet the threshold is simply to no avail.  See Manchester, 967 F.2d at 692.

For all of these reasons, Wilmington's Motions to Dismiss for lack of personal jurisdiction in both actions are denied.

III.  L'Archevesque's Motion to Dismiss

Defendant Paul L'Archevesque, the individual whose life is insured by the two policies at issue, asks the Court to dismiss him from the litigation.  Pruco and co-defendant Wilmington object; Lincoln takes no position.[8]

A.    Legal Standard

Under the familiar standard of Fed. R. Civ. P. 12(b)(6), the Court determines whether a complaint states any claim upon which relief can be granted.  In so doing, the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded factual allegations as true and giving the plaintiff the benefit of all reasonable inferences.  Buck v. Am. Airlines, Inc., 476 F.3d 29, 32-33 (1st Cir. 2007); In Re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).  A complaint must be dismissed if it does not allege "a plausible entitlement to

---

[8]   During argument, Lincoln's counsel said he named L'Archevesque as a party because in prior experience, when not named, insured individuals had taken the position that they did, in fact, have an interest in the case notwithstanding that they were not an owner or beneficiary of a policy.  Upon learning that L'Archevesque did not share this view and indeed disclaimed any such interest, Lincoln recognized (as does the Court) that L'Archevesque has no legally significant dog in this fight.

relief." <u>See</u> <u>Thomas v. Rhode Island</u>, 542 F.3d 944, 948 (1st Cir.
2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559
(2007)).

    B.  Discussion

Pruco's complaint contains three counts against all
defendants: rescission, mutual rescission and rescission for lack
of an insurable interest under R.I. Gen. Law § 27-4-27. Lincoln's
complaint is a one count declaratory judgment action under 28
U.S.C. § 2201 against all defendants seeking to establish the
rights and obligations pursuant to Lincoln's policy. In substance,
Lincoln requests the same relief as Pruco: a finding that Paul
L'Archevesque's alleged misrepresentations about his medical
history constitute grounds for rescission of the policy, and/or
that the policy is void for lack of an insurable interest.

L'Archevesque's argument is quite simple. He maintains that
the interests sought to be sorted out are already represented by
the other defendants, and there is no relief sought against him.
In particular, he stresses that the complaints allege that the
owner and beneficiary of the policies at the time they were
obtained was the Paul E. L'Archevesque Special Trust 2006, and that
the current owner and beneficiary is now the Paul E. L'Archevesque
Special Revocable Trust - 2006 (of which co-defendant Wilmington
and Mr. L'Archevesque's son Jay are co-trustees). As such, the
argument goes, no one alleges Mr. L'Archevesque has any interests

or rights to be adjudicated or declared in the litigation. In short, he is "merely" the insured life and the Court can afford complete relief to all affected parties as to rescission or viability of the policy without him.

The Court agrees. Pruco and Wilmington complain that it makes no sense for L'Archevesque to be excused from the litigation because his (alleged) misrepresentations put this train in motion. They assert that L'Archevesque completed and signed the policy applications,[9] such that it would be disingenuous for him to now claim he has no interest in the outcome of litigation in which the policies could be voided because of <u>his</u> actions. This argument has a practical common-sense appeal, but it must be rejected because of the way Pruco and Lincoln have framed their cases. Importantly, whether by design or by oversight no party has asserted a direct fraud or misrepresentation claim against L'Archevesque (and have not indicated any intent to seek leave to do so). Co-Defendant Wilmington has not and, according to its counsel, does not plan to assert a cross-claim against L'Archevesque under Fed. R. Civ. P. 13(g).

What this means is that the only relief sought is rescission or a declaration that the policies are void. Resolution of those

_____

[9] There is some dispute as to whether L'Archevesque actually applied for the policies, or whether he did so with his son via the L'Archevesque Special Revocable Trust - 2006. In any event, his signature appears on the certification and for purposes of this motion the Court takes the allegations as true.

issues will bind the owner of the policies, the insurance companies, and will certainly impact the beneficiary. But no argument can be made that L'Archevesque fits any of these three categories: he is not a party to the contract sought to be rescinded; and any remedy here would be against the trustees as trust owners, notwithstanding that L'Archevesque will be an important fact witness for both sides as to the underlying events.[10]

Boiled down, what Pruco and Wilmington contend is that L'Archevesque _should_ defend against the claim of misrepresentation because such a finding may impact L'Archevesque's relations with third-parties such as his insurance broker, or may affect the value of his estate and estate planning goals, and possibly lead to "multiple and repetitive" litigation by L'Archevesque if he is not a party. Simply put, however, it is the prerogative of L'Archevesque whether to and how to seek to protect such personal interests, all of which seem speculative in any event. By asking to leave the game now, L'Archevesque surely will be hard-pressed to complain later about a negative residual impact.[11] Though the Court is not unsympathetic to Wilmington's role as middle man, L'Archevesque has moved for dismissal, and the Court cannot ignore

---

[10] According to Pruco, a deposition of L'Archevesque is currently scheduled for May of 2009. Thus, Wilmington's concern that his participation in discovery as a third-party witness will be harder to ensure than if he remains a party appears unfounded.

[11] Pruco and Wilmington express a vague concern that "if" subsequent litigation were to occur, L'Archevesque may feel compelled to assert some right that he does not now view himself as having. When pressed, though, no party could give any teeth to this conjecture.

the fact that he is correct that Rule 12(b)(6) does not call for a balancing of equities or interests, and the relevant standard is not "it's awfully strange if he is not a party."[12]

Finally, Wilmington argues that L'Archevesque should remain a party because it is desirable "to get everything resolved in one place," and if he is dismissed a decision from this Court would likely not be binding as to him.  What is ironic, however, is that Wilmington makes this argument at the very same time it urges this Court to dismiss <u>it</u> from the Rhode Island litigation due to a lack of personal jurisdiction.  Thus, Wilmington's argument as to a purported "need" for L'Archevesque rings a bit hollow, given that the relief it seeks for itself triggers identical concerns about judicial economy and dispersed litigation.

IV.  <u>Conclusion</u>

For the forgoing reasons, Wilmington's motions to dismiss for lack of personal jurisdiction are DENIED; L'Archevesque's motions to dismiss are GRANTED.

IT IS SO ORDERED.

_____
William E. Smith
United States District Judge
Date: 5/18/09

_____

[12] An issue was raised as to whether L'Archevesque is a necessary party under Fed. R. Civ. P. 19(a).  In large part for the reasons discussed above, the Court finds he is not.